**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JP MORGAN TRUST COMPANY, NATIONAL ASSOCIATION, in its capacity as Trustee of the FI Liquidating Trust, on behalf of Farmland Industries, Inc., now known as Reorganized FLI, Inc.,**

**Plaintiff,**

**v.** **Case No. 05-2231-JWL**

**MID-AMERICA PIPELINE COMPANY, et al.,**

**Defendants.**

---

**MEMORANDUM AND ORDER**

This lawsuit arises from a dispute regarding a pipeline between Conway, Kansas, and El Dorado, Kansas. Plaintiff JP Morgan Trust Company, National Association, brings this lawsuit in its capacity as the liquidating trustee established under the Chapter 11 bankruptcy reorganization plan of Farmland Industries, Inc., now known as Reorganized FLI, Inc. (Farmland). Farmland's amended complaint asserts breach of contract and antitrust claims against the former and current owners and operators of the pipeline based on privatization of the pipeline for non-public use. This matter is presently before the court on the motions of defendants Mid-American Pipeline Company, Mid-America Pipeline Company, L.L.C. and Mapletree, L.L.C. (collectively, MAPL) and ONEOK Field Services Company, ONEOK MGL Marketing, L.P., ONEOK, Inc. and ONEOK NGL Pipeline, L.P. (collectively,

ONEOK) to dismiss (doc. #233) Farmland's complaint for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure based on the *Rooker-Feldman* doctrine, which is joined by defendants The Williams Companies, Inc., Williams Energy Services, Inc. and Williams Energy Group (collectively, Williams) (doc. #239).[1] For the reasons explained below, this motion to dismiss is denied.

## FACTS[2]

Farmland refined and sold petroleum products through its refinery in Coffeyville, Kansas, between at least 1982 and May 1, 2004. MAPL for years has owned and/or operated a series of pipelines between Coffeyville; El Dorado, Kansas; and Conway, Kansas. Two of those are pipelines between El Dorado and Coffeyville. Farmland does not contend that it was ever denied use of either of these lines. More pertinent to this lawsuit are the pipeline segments between Conway and El Dorado. MAPL owns and continues to operate as a common carrier/public use line a 69-mile, six-inch pipeline between Conway and El Dorado. Transportation on this line is eastbound only, meaning from Conway to El Dorado, not El Dorado to Conway. Additionally, between 1982 and September 1, 2001, MAPL leased and

---

[1] Plaintiff's motion for leave to file a surreply (doc. #327) is granted because it addresses important legal issues which defendants raised for the first time in their reply brief. Defendants commendably admit that they discovered the Tenth Circuit's opinion in *Guttman v. Khalsa*, 446 F.3d 1027 (10th Cir. 2006), while drafting their reply brief.

[2] Consistent with the standard for a factual attack on subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the following facts are those established by the documentary evidence submitted in connection with this matter.

operated another six-inch pipeline between Conway and El Dorado which was owned by Texaco. The Texaco lease line is the primary subject of this lawsuit. The Texaco lease line provided transport service between Conway and El Dorado, and ran roughly parallel to MAPL's Conway-El Dorado line. MAPL used its Conway-El Dorado line and the Texaco lease line to provide public transportation service of natural gas liquids (NGLs) to approximately fifty shippers, including Farmland.

MAPL and Texaco's negotiations for renewal of MAPL's continued operation of the Texaco lease line failed by July of 2001. Texaco notified MAPL that the lease would terminate on September 1, 2001, and that MAPL must then surrender and cease operations of the Texaco lease line. MAPL, in turn, notified Farmland and other shippers who had been transporting product on the pipeline that MAPL's lease of the Texaco lease line would end and that MAPL would be forced to allocate remaining capacity on MAPL's Conway-El Dorado line. MAPL's lease of the Texaco lease line terminated on September 1, 2001. MAPL's remaining Conway-El Dorado line did not have sufficient capacity to satisfy all the requests of every shipper seeking common carrier transportation service between Conway and El Dorado. Accordingly, MAPL implemented the established allocation program as set forth in its tariff based on its customers' prior use of the pipeline.

Texaco sold the line to ONEOK. ONEOK purchased NGLs in Conway, transported them to El Dorado, and sold them to Frontier El Dorado Refining Company in El Dorado (Frontier). ONEOK's operation of the line was for ONEOK's private purposes and the Texaco lease line was no longer in public service.

On August 29, 2001, Farmland filed a complaint with the Kansas Corporation Commission (KCC) pursuant to K.S.A. §§ 66-104, 66-105, 66-1,215, 66-1,230, and 66-1,238, as well as K.A.R. § 82-1-220 seeking an order from the KCC prohibiting MAPL and Texaco from abandoning common carrier, public utility transportation service on the two pipelines between Conway-El Dorado (the KCC Litigation). Farmland and defendants spent several years litigating the claims involved in the KCC Litigation, which included multiple hearings, exhaustive discovery, and extensive motion practice. On August 24, 2004, the KCC conducted an evidentiary hearing on Farmland's complaint and it considered a number of issues relating to MAPL's operation of the Conway-El Dorado lines and removal of the Texaco lease line from common carrier/public use. The KCC issued a written order on January 31, 2005, ruling against Farmland in all respects but one. On March 18, 2005, the KCC issued an order denying the parties' petitions for reconsideration. Farmland and MAPL subsequently appealed the KCC's rulings to the Shawnee County, Kansas, District Court.

On May 31, 2005, Farmland initiated this lawsuit. In this lawsuit, Farmland's amended complaint against MAPL, ONEOK, and Williams asserts breach of contract and antitrust claims. Farmland alleges that MAPL and/or Williams breached the following contract: "a 1996 Settlement and Mutual Release Agreement, as amended by the 1998 Letter Agreement and the 1998 Settlement and the 1998 Coffeyville to Conway Agreement and the 1998 Letter Agreement to the Coffeyville to Conway Agreement." (Am. Compl. (doc. #73),

¶ 142, at 36-37.)[3] Farmland also alleges that defendants' actions with respect to the pipelines violated state and federal antitrust statutes. (*Id.* at 37-39.)

On December 21, 2005, ONEOK and the KCC staff filed a motion with the KCC, Docket No. 06-ONEP-646-COC, to accept a stipulated settlement agreement concerning ONEOK's request to operate the Texaco lease line as a limited contract carrier for the purposes of serving Frontier and Farmland's successor, Coffeyville Resources Refining & Marketing, LLC, in Coffeyville. On January 20, 2006, Farmland filed an application arguing that it should be permitted to intervene in order to protect all of its interests in the previous KCC Litigation. The KCC denied Farmland's request to intervene as well as Farmland's subsequent request to reconsider. The KCC approved ONEOK's activity.

On July 13, 2006, the state court affirmed the KCC's rulings against Farmland and reversed the KCC's decision on the single issue decided against MAPL. In other words, Farmland did not prevail on any of its claims in state court. Farmland subsequently appealed that ruling. In an order dated January 30, 2007, the Kansas Court of Appeals stayed the appeal and remanded the case to the district court for further proceedings while retaining jurisdiction over the case.[4]

---

[3] As the court has ruled previously, the claim that Farmland lists separately as a claim for "Bad Faith and Unfair Dealing" (Am. Compl. at 39-40) is really a part of its breach of contract claim.

[4] Defendants' Motion to Supplement the Record (doc. #330) with this order from the Kansas Court of Appeals is granted.

In support of defendants' motion to dismiss for lack of jurisdiction under *Rooker-Feldman*, defendants direct the court's attention to the deposition testimony of Farmland's corporate representative, Jeff Ayres. According to defendants, Mr. Ayres admitted that Farmland is not asserting any substantive issues in this lawsuit that were not raised in the prior KCC proceedings. He also admitted that the linchpin of Farmland's breach of contract and antitrust claims is the privatization of the Texaco lease line. He admitted that the KCC considered and rejected Farmland's argument that MAPL's/Williams' allocation was unlawful or improper; that MAPL/Williams unlawfully abandoned service of the Texaco lease line; that MAPL's failure to renew the Texaco lease constituted unlawful abandonment; that MAPL/Williams did not have a proper certificate of convenience; that MAPL had not been officially or effectively allocating pipeline transportation in violation of its obligations; that MAPL, after failing to renew the Texaco lease line, improperly allocated pipeline capacity, which prevented Farmland from being able to reach the volume quantities necessary to trigger a more favorable pricing schedule; that defendants and others unlawfully agreed to remove the Texaco lease line from the common carrier/public use domain; that MAPL's failure to renew the Texaco lease caused or led to five separate "dynamics" that harmed Farmland; and that defendants, after MAPL's lease of the Texaco lease line expired, provided transportation capacity to Farmland's competitor, Frontier.[5] Defendants also rely

---

[5] The court does not necessarily agree with defendants' characterization of Mr. Ayres testimony on all of these issues. But, the court nonetheless accepts that characterization for purposes of the current motion because it is not controverted by plaintiffs and, additionally, ultimately it is immaterial to resolution of defendants' motion in any event.

on two expert opinions from John Dunn and James Dittmer concerning Farmland's theory of liability on the antitrust claim and alleged damages for all claims in Farmland's federal case. According to defendants, Mr. Dunn opines that MAPL's loss of its right to operate the Texaco lease line, Texaco's decision to remove the line from public use, and MAPL's resulting allocation created an anti-competitive environment that harmed Farmland. Mr. Dittmer opines that, as a result of Farmland's inability to rely upon the Texaco lease line, Farmland incurred additional shipping charges.

Defendants now move to dismiss Farmland's complaint for lack of jurisdiction based on the *Rooker-Feldman* doctrine. They contend that the material facts in dispute before the KCC and now the Kansas Court of Appeals are the same as they are in this court, and they further contend that the issues raised by Farmland are exact replicas of the ones Farmland is presenting to this court.

## LEGAL STANDARD FOR A RULE 12(B)(1) FACTUAL ATTACK

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is raised either as a facial challenge or a factual challenge. *Paper, Allied-Industrial, Chemical & Energy Workers Int'l Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). In a facial attack the movant challenges the allegations in the complaint regarding subject matter jurisdiction, requiring the court to accept those allegations as true. *Id.* In a factual attack such as the one here, the movant goes beyond those allegations and challenges the facts upon which subject matter jurisdiction depends. *Id.* In reviewing a factual attack,

the court looks beyond the allegations in the complaint and has wide discretion to allow documentary and even testimonial evidence. *Id.* The court generally does not convert the motion into one for summary judgment, *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001), unless resolution of the jurisdictional question is intertwined with the merits of the case, *Continental Carbon Co.*, 428 F.3d at 1225. In this case, resolution of the jurisdictional question is not intertwined with the merits of the case and, therefore, the court construes the motion as a Rule 12(b)(1) factual challenge without converting the motion into one for summary judgment.

**ANALYSIS**

The origin of the *Rooker-Feldman* doctrine is 28 U.S.C. § 1257(a), which states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the Supreme Court interpreted this statute to mean that only it can hear appeals from final judgments of state courts and, therefore, by negative inference a federal district court does not have subject matter jurisdiction to review a case that was resolved by state courts. *Id.* at 415-16. The Supreme Court elaborated on this principle in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), when it held that challenges to a state court judgment are barred not only if the claims forming the basis of the challenge were raised in the state court proceedings, but also if the claims

presented to the district court are "inextricably intertwined" with the state court's denial of the plaintiff's claims. *Id.* at 483 n.16.

The Supreme Court revisited this doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). In *Exxon Mobil*, the Court observed that the *Rooker-Feldman* doctrine had been variously interpreted in the lower courts and had "sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases." *Id.* at 283. The Court clarified that the scope of the doctrine is "confined" to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284; *accord Lance v. Dennis*, 546 U.S. 459 (2006) (observing that the Court in *Exxon Mobil* explained that *Rooker-Feldman* is a "narrow doctrine"). According to the Court, "*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments . . . precludes a United States district court from exercising subject-matter jurisdiction." *Exxon Mobil*, 544 U.S. at 291. The doctrine is not triggered by parallel state and federal litigation. *Id.* at 292. In such cases, the *Rooker-Feldman* doctrine does not operate to deprive the district court of jurisdiction over those claims, but the federal action may be impacted by comity, abstention, or preclusion principles. *Id.* at 292-93.

Here, defendants' reliance on the *Rooker-Feldman* doctrine is without merit largely because it relies on case law and legal principles which pre-date *Exxon Mobil*, a case which "substantially narrowed the scope of *Rooker-Feldman*." *Mo's Express, LLC v. Sopkin*, 441

F.3d 1229, 1231 (10th Cir. 2006). The *Rooker-Feldman* doctrine does not bar this court's subject matter jurisdiction here because defendants have not established that the state court proceedings had ended before Farmland commenced this federal lawsuit and, in any event, the claims at issue in this lawsuit are not inextricably intertwined with the state-court judgment.

**A. Whether the State-Court Proceedings Had Ended**

Prior to *Exxon Mobil*, the Tenth Circuit and other Courts of Appeal had adopted a rule that the *Rooker-Feldman* doctrine applied to state court decisions that were not final. *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006). Thus, the law in this circuit formerly was that "'lower federal courts possess no power whatever to sit in direct review of state court decisions. This prohibition extend[ed] to all state-court decisions–final or otherwise.'" *Id.* (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002)). But, now, "[u]nder *Exxon Mobil*, the *Rooker-Feldman* doctrine only applies to cases brought '*after the state proceedings ended*.'" *Guttman*, 446 F.3d at 1031 (emphasis in original; quoting *Exxon Mobil*, 544 U.S. at 291). Thus, "*Rooker-Feldman* applies only to suits filed after state proceedings are final." *Guttman*, 446 F.3d at 1032.

Defendants contend that this court should reject the *Guttman* panel's decision because it improperly strayed from established Tenth Circuit precedent. Defendants correctly point out that one panel of the Tenth Circuit cannot overturn the decision of another panel absent en banc reconsideration or a superseding contrary decision by the Supreme Court. *United States v. Torres-Duenas*, 461 F.3d 1178, 1183 (10th Cir. 2006). Defendants argue that

several Tenth Circuit decisions prior to *Guttman* recognized that *Exxon Mobil* was not a superseding contrary decision that required rejection of this prior rule. In support of this argument, defendants cite *Garner v. Gonzales*, 167 Fed. Appx. 21, 2006 WL 245783, at *1 (10th Cir. Feb. 2, 2006), an unpublished case which is entitled to no precedential value. Defendants also rely on *Bolden v. City of Topeka*, 441 F.3d 1129 (10th Cir. 2006), in which the Tenth Circuit applied *Rooker-Feldman* to a dispute where the state-court matter had not become final until after the federal suit was filed. In *Bolden*, however, the Tenth Circuit determined that *Rooker-Feldman* did not apply for other reasons and, therefore, the court did not decide the issue of whether that state court decision met the requisite finality standard under *Exxon*. Defendants also contend that in *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1208 (10th Cir. 2006), the Tenth Circuit suggested that any state-court judgment would provide a basis for application of *Rooker-Feldman*. As with *Bolden*, however, the Tenth Circuit determined that *Rooker-Feldman* did not apply for other reasons and, thus, again, the court did not decide the issue of whether that state court decision met the requisite finality standard under *Exxon Mobil*.

*Guttman* was the first case after *Exxon Mobil* in which the Tenth Circuit was actually called upon to resolve the specific issue of the requisite finality of the state-court judgment. In *Guttman*, the plaintiff specifically argued "that the district court erred in dismissing the case for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine because he filed his federal complaint before his case in state court was final." 446 F.3d at 1031. Thus, in *Guttman* the Tenth Circuit was confronted for the first time with the issue of the meaning

of the Supreme Court's statement in *Exxon Mobil* that "the *Rooker-Feldman* doctrine only applies to cases brought '*after the state proceedings ended*.'" *Id.* (emphasis in original; quoting *Exxon Mobil*, 544 U.S. at 291). Upon being faced with this issue, the Tenth Circuit recognized that *Exxon Mobil* reversed this circuit's prior law on this issue. In doing so, the Tenth Circuit joined the First, Second, Eighth, and Ninth Circuits in holding that *Rooker-Feldman* "applies only to suits filed after state proceedings are final." *Id.* at 1032.

Since *Guttman*, different panels of the Tenth Circuit have subsequently adhered to *Guttman*. *See Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (holding the district court erred by dismissing the plaintiff's complaint under *Rooker-Feldman* because the state court proceedings had not reached the end of the state courts' appeal process); *Bear v. Patton*, 451 F.3d 639, 641-42 (10th Cir. 2006) (vacating the district court's dismissal under *Rooker-Feldman* and remanding to the district court to determine whether the state court judgment was final and appealable under Kansas law at the time the federal action was filed). The only arguable aberration is a statement made by the Tenth Circuit in *Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006), that the "state condemnation proceeding need not be final in order to serve as grounds for *Rooker-Feldman* preclusion." *Id.* at 1257 (citing *Kenmen Engineering*, 314 F.3d at 474). This court will not give credence to this relatively cursory statement by the Tenth Circuit in *Tal* because it is contradicted by the Tenth Circuit's well developed and thoroughly reasoned opinion on this issue in *Guttman*, and because the Tenth Circuit subsequently followed *Guttman* when it reversed district court rulings on this particular issue in *Chapman* and *Bear*. In sum, given the clarity of the Tenth Circuit's

holding in *Guttman* as well as its subsequent decisions applying *Guttman*, the court finds defendants' argument that the court should reject the *Guttman* panel's decision to be without merit. The court concludes that *Guttman* is binding precedent in light of *Exxon Mobil*.

The court turns, then, to applying the Tenth Circuit's holding in *Guttman* to the facts of this case. In *Guttman*, the Tenth Circuit noted that the First Circuit in *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005), "helpfully explained the situations where a judgment would be considered final for *Rooker-Feldman* purposes." 446 F.3d at 1032 n.2. This includes the following three situations: (1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved; (2) when the state action has reached a point where neither party seeks further action; or (3) when the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions remain to be litigated. *Guttman*, 446 F.3d at 1032 n.2. In this case the state action is not "final" in the sense that the case is still before the Kansas Court of Appeals, which has retained jurisdiction over the case while remanding it to the district court for further proceedings. Thus, this case does not fall within (1) above because the Kansas Supreme Court has not affirmed the judgment below such that nothing is left to be resolved. It also does not fall within (2) above because it is not a case in which the state action has reached a point where neither party seeks further action. The final ground potentially available for the state action to be considered "final" for *Rooker-Feldman* purposes is (3) above, i.e., if state court proceedings have finally resolved all the federal questions in the litigation, but

state law or purely factual questions remain to be litigated. The contours of this particular finality standard were explained at length by the First Circuit in *Federacion de Maestros de Puerto Rico*, 410 F.3d at 25-27. The court will not delve into this potentially thorny issue here because defendants have not advanced this theory as a ground for this court to find that the state court proceedings are "final" for *Rooker-Feldman* purposes and, additionally, this issue would not be dispositive here because of this court's finding (below) that the claims in this lawsuit are not inextricably intertwined with the state-court judgment in any event. In short, defendants have not established that the state-court judgment was "final" for *Rooker-Feldman* purposes.

**B. Whether the Claims in This Lawsuit are Inextricably Intertwined with the State-Court Judgment**

*Rooker-Feldman* precludes federal district courts from effectively exercising appellate jurisdiction over claims "actually decided by a state court" and claims "inextricably intertwined with a prior state-court judgment." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006). Here, defendants contend Farmland's claims are inextricably intertwined with the state court action. The Tenth Circuit has acknowledged confusion prior to *Exxon Mobil* concerning the meaning of the phrase "inextricably intertwined" and has clarified the meaning of that term. *See Bolden v. City of Topeka*, 441 F.3d 1129, 1140 (10th Cir. 2006); *see also Mo's Express, LLC*, 441 F.3d at 1237-38. According to the Tenth Circuit, the concept of an inextricably intertwined state-court judgment does not expand the scope of the *Rooker* bar beyond challenges to state-court judgments. *Bolden*, 441 F.3d at

1141. Rather, the fact that *Feldman* bars lower federal court review of a claim that is inextricably intertwined with a state court judgment means that "a challenge to a judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings." *Id.* The *Rooker-Feldman* doctrine does not stop the court from exercising jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. *Mo's Express*, 441 F.3d at 1237; *Bolden*, 441 F.3d at 1143. The doctrine does not apply when the relief sought by the plaintiff would not reverse or undo the state-court judgment. *Mo's Express*, 441 F.3d at 1237. A party may lose in state court and raise precisely the same legal issues in federal court as long as the relief sought would not reverse or undo the relief granted by the state court. *Id.* The court has jurisdiction if the plaintiff presents an independent claim, even if it denies a legal conclusion reached by the state court. *Bolden*, 441 F.3d at 1143. Under those circumstances, the court has jurisdiction and state law preclusion principles apply. *Id.*

The facts of this case are materially indistinguishable from those in *Bolden*. In *Bolden*, the plaintiff purchased two houses which were scheduled to be demolished by the City of Topeka. 441 F.3d at 1131. The plaintiff initiated litigation in state court seeking to enjoin the destruction of the properties. *Id.* at 1132. The court denied both requests for injunctions. *Id.* The plaintiff then filed suit in federal court seeking a temporary restraining order to prevent the City from taking away his janitorial contract in retaliation for his protected speech and the demolition of his real property in violation of his civil rights. *Id.* The district court dismissed the claims under the *Rooker-Feldman* doctrine, holding it did not

have jurisdiction over the plaintiff's civil rights claims because they were "inextricably intertwined" with the state court's decision that the City could proceed with demolition of the houses. *Id.* On appeal, the Tenth Circuit reversed. The court explained that in the plaintiff's federal lawsuit he was not asking the district court to overturn the state-court judgment. *Id.* at 1145. Rather, he filed suit in federal court claiming numerous civil rights violations arising from the destruction of his buildings. *Id.* The Tenth Circuit reasoned that "all the state-court judgment did was *permit* the City to demolish [plaintiff's] buildings–it did not *require* their demolition." *Id.* (emphasis in original).

Similarly, in this case, the state action gave the defendants regulatory approval to remove the pipeline from common carrier/public use. In other words, it permitted, but did not require, them to do so. The state-court proceeding merely involved a finding that defendants' actions did not run afoul of state utility regulations. Farmland is not asking the court to overturn that result. Instead, Farmland is asserting breach of contract and antitrust claims arising from defendants' privatization of the Texaco lease line. Farmland could have asserted the claims in this lawsuit, which are independent of the propriety of Farmland's actions under state regulatory standards, in the absence of the KCC Litigation and the related state-court proceedings. Consequently, the outcome of the state-court proceedings is not inextricably intertwined with the claims in this case for *Rooker-Feldman* purposes. Accordingly, this court has jurisdiction over Farmland's claims. The impact, if any, of defendants' victory at the state court level will be determined by preclusion principles.

**C. <u>Defendants' Request for a Stay</u>**

Finally, in defendants' reply memorandum, they request, in the alternative, that the court stay all proceedings until the state-court action has ended. Defendants have advanced a mere one-paragraph argument in which they contend that the *Exxon Mobil* court recognized that comity or abstention doctrines may permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation, and that this case is a perfect candidate for such a stay in light of Farmland's attempt to use this court's discovery procedures to undermine the KCC's rulings. Defendants' cursory argument, which merely alludes to principles of comity and abstention without advancing any meaningfully developed argument on this matter, is by no means sufficient to persuade the court that such a stay is warranted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiff's Motion for Leave to File a Surreply to Defendants' Reply Memorandum in Support of Their Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. #327) is granted. The clerk is directed to detach and file the surreply.

**IT IS FURTHER ORDERED THAT** Defendants' Motion to Supplement the Record in Support of Their Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. #330) is granted.

**IT IS FURTHER ORDERED THAT** Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. #233) is denied.

**IT IS SO ORDERED** this 12th day of February, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge